USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 25, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                                    :
AIG PROPERTY AND CASUALTY, CO., as                                  :
subrogee of LARRY and JANE SCHEINFELD,                              :
                                                                    :
                              Plaintiff,                            :
                                                                    :        15-cv-6316 (KBF)
                   -v-                                              :
                                                                    :        OPINION & ORDER
                                                                    :
FEDERAL EXPRESS CORPORATION, FEDEX                                  :
CORP., FEDEX CORPORATE SERVICES, INC.,                              :
FEDEX GROUND PACKAGE SYSTEM, INC., and                              :
IL PELLICANO HOTEL,                                                 :
                                                                    :
                              Defendants.                           :
                                                                    :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

Plaintiff AIG Property and Casualty, Co. ("AIG") brought this action, as

subrogee of Larry and Jane Scheinfeld, against Federal Express Corporation, FedEx

Corp., FedEx Corporate Services, Inc., and FedEx Ground Package System, Inc.

(collectively, "FedEx") and Il Pellicano Hotel seeking to hold defendants liable for

negligently losing the Scheinfelds' three bags of luggage and other goods while the

Scheinfelds were traveling in Italy.

Pending before the Court is FedEx's motion to dismiss AIG's amended

complaint pursuant to Rule 12(b)(6).  FedEx's primary ground for dismissal is that

AIG's claim is barred by the two-year limitation provision of the Montreal

Convention, the international treaty that governs the liability of air carriers in the

international carriage of baggage and cargo.  FedEx also raises several other

alternative grounds for dismissal, including that: AIG's claim is preempted by the

Airline Deregulation Act, 49 U.S.C. § 41713, AIG fails to allege sufficient factual content to allow the court to draw a reasonable inference of liability, and, finally, dismissal is appropriate on <u>forum non conveniens</u> grounds.  For the reasons set forth below, the Court concludes that AIG's claim is barred by the two-year limitation provision of the Montreal Convention and therefore need not reach FedEx's other grounds for dismissal.  FedEx's motion is GRANTED, and the action is DISMISSED WITH PREJUDICE against the moving defendants.[1]

I.    BACKGROUND

On July 6, 2015, AIG filed this action in the New York Supreme Court, New York County, alleging that in July 2012, Larry and Jane Scheinfeld, while guests at the Il Pellicano Hotel, entrusted the defendants with certain luggage and other goods (worth in excess of $41,628.36), which were lost while in the custody and control of FedEx as a result of FedEx's negligence.  (Compl. ¶¶ 3, 6, 10, 11, ECF No. 1-1.)  On August 11, 2015, FedEx removed this action to this Court, arguing that this Court has subject matter jurisdiction under the Montreal Convention, a treaty of the United States, because the action involves an air shipment of cargo from Milan, Italy, to New York, New York.  (Notice of Removal ¶ 2, ECF No. 1.)

On August 18, 2015, FedEx moved to dismiss the complaint under Rule 12(b)(6) on the ground that AIG's claim is barred by Article 35 of the Montreal Convention.  (ECF No. 5.)  Specifically, FedEx asserted that the Montreal

---

[1] Plaintiff also named "Il Pellicano Hotel" as a defendant, but stated in its opposition to FedEx's motion that it has not served Il Pellicano Hotel, which has not appeared in this action.  (Decl. in Opp. and Mem. of Law at 5.)  Plaintiff has not indicated any intention to effect service on Il Pellicano Hotel and has not requested an extension of time to serve this defendant.  Therefore, solely as to Il Pellicano Hotel, this action is dismissed without prejudice.

Convention is a treaty that provides the exclusive remedy for actions against air carriers for loss or damage to cargo shipments and that AIG's claim is barred by the Montreal Convention's two-year "limitation of actions" provision that serves as a condition precedent to suit.  (ECF No. 7.)  On September 14, 2015, at the parties' request, this Court stayed all discovery pending resolution of FedEx's motion.  (ECF No. 17.)

In its September 29, 2015 opposition to FedEx's motion, AIG argued that FedEx failed to establish strict compliance with the Montreal Convention, and supplemented its argument with facts extraneous to the complaint.  (ECF No. 19.)  AIG further argued, in the alternative, that the Court should allow it one more opportunity to amend its complaint.  (ECF No. 19.)  In light of AIG's reliance on facts outside the complaint in its opposition, on October 1, 2015, the Court granted AIG's request to amend and denied FedEx's motion as moot.  (ECF No. 20.)  AIG filed its First Amended Complaint on October 15, 2015 (ECF No. 21); FedEx again moved to dismiss that complaint on November 5, 2015 (ECF No. 23).[2]

The First Amended Complaint supplemented AIG's original bare-bones complaint by adding the following allegations.  The First Amended Complaint alleges that FedEx took possession of the Scheinfelds' three bags of luggage pursuant to Tracking # 86191607044, but canceled the shipment because the bags contained perfumes that could not be shipped from Italy to New York.  (Am. Compl. ¶¶ 4-7, 10, ECF No. 22.)  AIG alleges that the bags were lost while FedEx was in

---

[2] Because AIG's filing was initially rejected, it re-filed its First Amended Complaint on October 16, 2015.  (ECF No. 22.)  FedEx's motion to dismiss the First Amended Complaint was also initially rejected; FedEx re-filed that motion on November 10, 2015.  (ECF No. 24.)

the process of shipping them by ground back to the Il Pellicano Hotel, after the air transaction to New York was canceled.  (Am. Compl. ¶¶ 11-12.)  AIG alleges that the bags were last known to be at a FedEx facility in Lonate Pozzolo, Italy, where they were lost, stolen or destroyed while in the custody of one of the FedEx defendants or another FedEx member company.  (Am. Compl. ¶ 13.)

AIG further alleges that if the bags were subsequently shipped to another location, they were shipped "without a proper airway bill or bill of lading," and/or they were lost, stolen or destroyed "after a cancelled air shipment request" and/or were lost "during a new ground transaction while being sent back to the Il Pellicano Hotel."  (Am. Compl. ¶¶ 14-16.)  AIG also alleges that FedEx "failed to issue an airway bill, receipt or any bill of lading for shipment back to the Il Pellicano Hotel."  (Am. Compl. ¶ 17.)  Finally, the First Amended Complaint attaches various documentary materials relating to the events at issue, including an air waybill that is crossed out and marked "returned", screenshots of FedEx tracking documents for the lost bags, and emails between various individuals (including Mrs. Scheinfeld, her personal assistant, and employees of the Il Pellicano Hotel) discussing the lost property.  (See Am. Compl., Ex. 1.)

As stated above, FedEx moved to dismiss the First Amended Complaint on several grounds, including that: (1) AIG's claim is barred by the two-year limitation period established in Article 35 of the Montreal Convention, (2) AIG's claim is preempted by the Airline Deregulation Act, 49 U.S.C. § 41713, (3) the allegations lack factual content sufficient to establish a plausible inference of liability, and (4)

the action should be dismissed on <u>forum non conveniens</u> grounds because all of the events giving rise to the suit took place in Italy.

AIG opposed the motion on December 9, 2015, again arguing that FedEx failed to establish strict compliance with the Montreal Convention, and that neither the Montreal Convention nor the Airline Deregulation Act apply because the air component of the transaction was canceled before the luggage was lost.  (ECF No. 30.)  AIG also argues that the motion should be treated as one for summary judgment because FedEx attached factual materials extraneous to the complaint to its motion papers, and that such a motion is premature because no discovery has yet occurred.  (ECF No. 30.)[3]  AIG's opposition does not respond to FedEx's <u>forum non conveniens</u> argument.

The motion became fully briefed when FedEx filed a reply on December 17, 2015.  (ECF No. 31.)

## II.   LEGAL STANDARDS

### A.   <u>Motion to Dismiss</u>

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a plaintiff must provide grounds upon which his claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d

---

[3] As explained below, the Court is able to resolve the pending motion in defendants' favor without need to look beyond the allegations of the First Amended Complaint or documents appended to it. The Court may therefore appropriately consider defendants' motion under Rule 12(b)(6), and need not consider it as a motion for summary judgment.

Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  Id.  The Court will give "no effect to legal conclusions couched as factual allegations."  Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  A plaintiff may plead facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).  But, if the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate.  Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).  Where necessary, the Court may supplement the allegations in the complaint with facts from documents either referenced therein or relied upon in

framing the complaint.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

      B.     Montreal Convention

      "The Montreal Convention governs the liability of air carriers in the 'international carriage of persons, baggage or cargo.'"  Chubb Ins. Co. of Europe S.A. v. Menlo Worldwide Forwarding, Inc., 634 F.3d 1023, 1026 (9th Cir. 2011) (quoting Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106–45, 1999 WL 33292734 (2000) ("Montreal Convention")); see Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 371 n.4 (2d Cir. 2004) (stating that the Montreal Convention unifies and replaces the system of liability that derived from the earlier Warsaw Convention).  The Montreal Convention entered force in 2003 "as the treaty exclusively governing the rights and liabilities of passengers and carriers in international air transportation."  Bassam v. Am. Airlines, 287 F. App'x 309, 312 (5th Cir. 2008).

      Numerous courts have concluded that, like the earlier Warsaw Convention, the Montreal Convention completely preempts claims brought under state law. Paradis v. Ghana Airways Ltd., 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004) aff'd, 194 F. App'x 5 (2d Cir. 2006); Mateo v. JetBlue Airways Corp., 847 F. Supp. 2d 383, 386-87 (E.D.N.Y. 2012); see also Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., 522 F.3d 776, 781 (7th Cir. 2008) (Enactment of the Montreal Convention "did not alter the original Warsaw Convention goal of maintaining limited and predictable damages amounts for airlines.").  Thus, claims falling within the treaty's scope must comply with its terms for bringing a claim.  Weiss v. El Al Israel Airlines, Ltd., 433

F. Supp. 2d 361, 365 (S.D.N.Y. 2006) ("[F]or all air transportation to which the Convention applies, if an action for damages, however founded, falls within one the Convention's three damage provisions, the Convention provides the sole cause of action under which a claimant may seek redress for his injuries."); Paradis, 348 F. Supp. 2d at 110-11.

   Article 18 of the Montreal Convention provides for carrier liability for damage to cargo, subject to certain exclusions. Weiss, 433 F. Supp. 2d at 365. It provides that a "carrier is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air." Montreal Convention, Ch. III, Art. 18 ¶ 1. Article 18 further states that the "carriage by air . . . **comprises the period during which the cargo is in the charge of the carrier.**" Montreal Convention, Ch. III, Art. 18 ¶ 3 (emphasis added).[4] Article 18 goes on to state:

> The period of the carriage by air does not extend to any carriage by land, by sea or by inland waterway performed outside an airport. If, however, such carriage takes place in the performance of a contract for carriage by air, for the purpose of loading, delivery or transhipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the carriage by air. If a carrier, without the consent of the

---

[4] Paragraph 3 of the Montreal Convention differs significantly from the analogous provision of the Warsaw Convention, which was much longer. The Warsaw Convention defined transportation by air as "the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever." Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d 448, 464 (2d Cir. 2003) (emphasis added). The Explanatory Note to Article 18 of the Montreal Convention states that the purpose of this modification was to "make clear that the Convention applies whenever and wherever the cargo is in the possession custody or charge of the carrier, whether on or off airport premises." Montreal Convention Explanatory Note, Ch. III, Art. 18, ¶ 3 (quotation marks omitted).

8

> consignor, substitutes carriage by another mode of
> transport for the whole or part of a carriage intended by
> the agreement between the parties to be carriage by air,
> such carriage by another mode of transport is deemed to
> be within the period of carriage by air.

Montreal Convention, Ch. III, Art. 18 ¶ 4.  The Montreal Convention does not itself

define the scope of the term "performance of a contract for carriage by air."

Article 35 of the Montreal Convention, which is titled "Limitation of Actions",

states:

> The right to damages shall be extinguished if an action is
> not brought within a period of two years, reckoned from
> the date of arrival at the destination, or from the date on
> which the aircraft ought to have arrived, or from the date
> on which the carriage stopped.

Montreal Convention, Ch. III, Art. 35 ¶ 1.  Article 35 further states that the

"method of calculating that period shall be determined by the law of the court seised

of the case."  Montreal Convention, Ch. III, Art. 35 ¶ 2.  By its terms, Article 35

extinguishes the right to damages.  Chubb Ins., 634 F.3d at 1026.  Relying for the

most part on cases interpreting an identical provision contained in Article 29(1) of

the Warsaw Convention, a number of courts have ruled that the two-year limitation

period constitutes a condition precedent that absolutely bars suit, including third-

party actions, not commenced within two years.  Am. Home Assur. Co. v. Kuehne &

Nagel (AG & Co.) KG, 544 F. Supp. 2d 261, 263 (S.D.N.Y. 2008); Ireland v. AMR

Corp., 20 F. Supp. 3d 341, 348 (E.D.N.Y. 2014); Mateo, 847 F. Supp. 2d at 387; see

also Fishman by Fishman v. Delta Air Lines, Inc., 132 F.3d 138, 143 (2d Cir. 1998)

9

(stating that time limitation in Article 29 of the Warsaw Convention "is best termed a condition precedent to suit").

III.    DISCUSSION

FedEx's motion raises the issues of whether, based on the allegations contained in the First Amended Complaint, the Montreal Convention applies to AIG's negligence claim and, if so, whether FedEx may benefit from the treaty's two-year limitation provision.  If the Montreal Convention applies, AIG does not dispute that it failed to bring its claim within the two year period—the First Amended Complaint alleges that the Scheinfelds' luggage was lost in July 2012, while AIG did not bring this action until approximately three years later in July 2015.  For the reasons set forth below, the Court concludes that AIG's state law negligence claim is covered by the Montreal Convention.  The Court further concludes that AIG is entitled to rely on the Montreal Convention's two-year limitation provision, which serves as a condition precedent to suit.  As a result, AIG's damages claim against FedEx has been extinguished and this suit must be dismissed.

At the outset, AIG broadly contends that FedEx's motion should be treated as one for summary judgment and be denied as premature because FedEx has not answered the complaint or provided any discovery.  That argument is meritless.  Although FedEx filed a short declaration pertaining to the nature of the various defendants' operations (Decl. of Clement E. Klank III, ECF No. 26), the Court is, for the reasons set forth below, able to rely solely on allegations within the First Amended Complaint or documents appended to it to resolve this motion.  There is thus no need to convert FedEx's motion to one for summary judgment.  With respect

to AIG's request for discovery, AIG has failed to show how permitting discovery to proceed could lead to a different outcome.  See Fed. R. Civ. P. 56(d); Kazolias v. IBEWLU 363, 806 F.3d 45, 54 (2d Cir. 2015).  Where the allegations in a complaint do not plausibly state a claim, dismissal at the motion to dismiss stage is appropriate.  Twombly, 550 U.S. at 570.

      Based on the allegations in the First Amended Complaint and the documentation appended to it, AIG's claim is clearly covered by the Montreal Convention because it arises from the loss of an international air shipment of cargo from Milan, Italy to New York, New York.  The First Amended Complaint alleges that the Scheinfelds entrusted FedEx with certain luggage at the Il Pellicano Hotel and that the luggage was lost while FedEx was shipping it back to the Il Pellicano Hotel because the luggage contained perfumes that could not be shipped.  (Am. Compl. ¶¶ 3, 11.)[5]  The First Amended Complaint further alleges that the bags were lost, stolen or destroyed "while in the custody of one of the Fedex defendants or a Fedex member company."  (Am. Compl. ¶ 13.)  AIG also attaches to the First Amendment Complaint a FedEx "International Air Waybill" for three pieces of cargo to be shipped from the Il Pellicano Hotel to the Scheinfelds' address in New York.  (Am. Compl., Ex. 1.)[6]  In short, the First Amended Complaint contains ample

---

[5] Notably, the First Amendment Complaint never alleges (and AIG never argues) that FedEx breached its contractual arrangement by making the decision to return the luggage to the Il Pellicano Hotel.  Even when viewing the allegations in the light most favorable to AIG, no inference may be drawn that FedEx acted outside the scope of its contract by canceling the air transaction with the intention to return the luggage to the Il Pellicano Hotel.

[6] A "waybill" is a "document acknowledging the receipt of goods by a carrier or by the shipper's agent and the contract for the transportation of those goods."  WAYBILL, Black's Law Dictionary (10th ed. 2014).  An "air waybill" is a "waybill for transportation of cargo by air."  Id.

allegations showing that the transaction underlying the dispute was intended to involve an international air shipment of cargo and that the luggage was lost while FedEx was in the performance of its carrier duties.

AIG argues that the Montreal Convention does not apply based on its allegations that "[w]hen the bags were lost, [FedEx was] in the process of shipping them by ground back to the Il Pellicano Hotel," and that the "bags were lost after the air transaction to New York was canceled." (Am. Compl. ¶¶ 11-12.) Those allegations are, however, irrelevant to whether the claimed injury falls within the scope of the Montreal Convention, as Article 18 provides for broader coverage than AIG's argument suggests.

Article 18 states that "carriage by air . . . comprises the period during which the cargo is in the charge of the carrier." Montreal Convention, Ch. III, Art. 18 ¶ 3. Because AIG alleges that the luggage was lost while in the charge of FedEx (and there is no allegation that FedEx had ceased to serve as a carrier), its claim falls within the plain terms of paragraph 3 of Article 18. Unlike the prior language used in Article 18 of the Warsaw Convention, the Montreal Convention does not limit the scope of coverage of paragraph 3 to the period during which the carrier is in possession of the cargo at an airport or on board an aircraft. The Explanatory Note to paragraph 3 (which expounds on the reasons for the changes adopted from the Warsaw Convention), shows that Article 18 is intended to cover damage to cargo "whenever and wherever the cargo is in the possession custody or charge of the carrier." Based on AIG's allegations, that condition is met here. Montreal

Convention Explanatory Note, Ch. III, Art. 18, ¶ 3. AIG's state law claims are therefore preempted, and AIG's claim must comply with the Montreal Convention's terms to remain viable. <u>Weiss</u>, 433 F. Supp. 2d at 365; <u>Paradis</u>, 348 F. Supp. 2d at 110-11.

AIG argues that even if its claim is otherwise covered by the Montreal Convention, defendants may not benefit from Article 35's two-year limitation provision because defendants have not established strict compliance with the treaty's terms. Specifically, AIG argues that FedEx did not follow necessary procedures, and may not avail itself of Article 35, because FedEx failed to issue separate air waybills as to each piece of luggage, and also failed to issue a separate bill of lading, receipt or air waybill for its attempted return of the luggage to the Il Pellicano Hotel. AIG cites <u>Fujitsu Limited v. Federal Express Corporation</u>, 247 F.3d 423 (2d Cir. 2001), in support of this argument. That case is inapposite.

<u>Fujitsu</u> involved a shipment of cargo from Narita, Japan to Austin, Texas that FedEx (the shipper), sent back from Austin to Narita (on the order of the consignee) by way of FedEx's hub in Memphis, Tennessee. <u>Id.</u> at 426-27. Although FedEx had provided a proper air waybill for the initial shipment as specified in Article 8 of the Warsaw Convention (which was then still in effect), the shipment from Austin to Memphis did not include an air waybill, and the shipment from Memphis to Narita only included an air waybill that lacked certain required information. <u>Id.</u> Faced with the question whether FedEx could benefit from the Warsaw Convention's limitation of liability to $9.07 per pound of cargo damaged in

the shipment back to Japan, the Second Circuit determined that, pursuant to Article 9 of the Warsaw Convention, FedEx could not rely on the damages limitation because FedEx did not strictly comply with the air waybill requirement. Id. at 429.

The above recitation of the facts in Fujitsu shows that it is clearly distinguishable from this case.  Whereas Fujitsu involved three distinct shipments of cargo (with only one shipment containing a compliant air waybill), this case involves one shipment of three pieces of luggage that were all covered by the single air waybill that AIG appended to the First Amended Complaint.  (Am. Compl., Ex. 1.)[7]  Notably, AIG does not argue that this single air waybill was deficient in any way.  Fujitsu, furthermore, involved an entirely different limitation of liability provision contained in Article 9 of the Warsaw Convention, the predecessor of the Montreal Convention.  In contrast to Article 9 of the Warsaw Convention, Article 9 of the Montreal Convention directly contradicts AIG's argument.  That provision states that non-compliance with the Montreal Convention's air waybill requirements does "not affect the existence or the validity of the contract of carriage, which shall, nonetheless, be subject to the rules of this Convention including those relating to limitation of liability."  Montreal Convention, Ch. II, Art. 9; see Vigilant Ins. Co. v. World Courier, Inc., No. 07 CV 194 (CM), 2008 WL

---

[7] AIG's allegation that the luggage was lost while being returned to the Il Pellicano Hotel, instead of while en route to its intended destination, is of no consequence.  AIG cites no authority for the proposition that a separate air waybill was required for the return of the Scheinfelds' luggage under these circumstances.

2332343, at *5 (S.D.N.Y. June 4, 2008).  Thus, regardless of FedEx's failure to comply with air waybill requirements, the two-year limitation provision applies.

Finally, AIG argues that "plaintiffs should not be bound as AIG stands in the shoes of its insured the Scheinfelds and they were not a party to the airway bill." (Decl. in Opp. and Mem. of Law at 8.)  The Court does not perceive how this statement bears on the viability of plaintiff's claim, as plaintiff alleges only a claim sounding in negligence, not breach of contract.  The Court therefore rejects this argument.

Having concluded that the Montreal Convention governs AIG's claim and that FedEx is entitled to the treaty's limitation provision, AIG's claim is extinguished for failure to comply with Article 35.

IV.    CONCLUSION

For the reasons set forth above, FedEx's motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) is GRANTED.  Defendants Federal Express Corporation, FedEx Corp., FedEx Corporate Services, Inc., and FedEx Ground Package System, Inc. are DISMISSED WITH PREJUDICE.  Defendant Il Pellicano Hotel, which has not been served or appeared in this action, is dismissed without prejudice.

The Clerk of Court is directed to close the motion at ECF No. 24 and to terminate this action.

SO ORDERED.

Dated:     New York, New York
           January 25, 2016

_____
          KATHERINE B. FORREST
          United States District Judge